IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Erin M. Eickhoff, Adam M. Stottler, and Erin M. Eickhoff, as Personal Representative of the Estate of Mark G. Stottler, Deceased, Plaintiffs, | CASE NO. 8:15-cv-65 |
| v. | **COMPLAINT** |
| Brenda Stottler and Colonial Life & Accident Insurance Company, Defendants. | |

Plaintiffs, Erin M. Eickhoff, Adam M. Stottler, and Erin M. Eickhoff, as Personal Representative of the Estate of Mark G. Stottler ("Mark" or "Mark Stottler"), deceased ("the Estate") (collectively, "Plaintiffs"), for their causes of action against Defendants, Brenda Stottler ("Brenda" or "Brenda Stottler") and Colonial Life & Accident Insurance Company, a South Carolina corporation ("Colonial Life"), allege as follows:

## THE PARTIES

1. Mark Stottler was an individual who resided in Tekamah, Burt County, Nebraska, when he died on August 31, 2014. The County Court of Burt County, Nebraska or its Registrar appointed Erin M. Eickhoff as the Personal Representative of the Estate of Mark Stottler. A copy of the Letters of Personal Representative is attached hereto as Exhibit A and incorporated herein by this reference.

2. Erin M. Eickhoff and Adam M. Stottler are brother and sister and the surviving natural children of Mark Stottler from a marriage prior to his marriage to Brenda Stottler. They are not the natural children of Brenda Stottler. Erin M. Eickhoff is a resident of Albion, Boone County, Nebraska, and Adam M. Stottler is a resident of Alma, Harlan County, Nebraska.

DOCS/1382322.4

3. Brenda Stottler is an individual, and on information and belief, she is a resident of Venice, Sarasota County, Florida.

4. Colonial Life is a South Carolina corporation. On information and belief, its principal place of business is in Columbia, Richland County, South Carolina, and it is doing business in Nebraska as a life insurance company.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between citizens of different states.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving right to Plaintiffs' claims occurred there.

## ALLEGATIONS OF FACT

7. Mark Stottler and Brenda Stottler were lawfully married on October 2, 1999.

8. In 2011, Brenda sued Mark for divorce in the District Court of Burt County, Nebraska (the "district court"), in Case No. CI11-66. The couple had no children together.

9. On or around February 24, 2012, as part of the divorce proceedings, Brenda and Mark entered into a Property Settlement Agreement (the "Agreement"). A copy of the Agreement is attached hereto as Exhibit B and is incorporated herein by this reference.

10. Under the Agreement, the district court awarded Mark ownership of all

personal property of every kind and description in his possession or titled in his name not otherwise awarded in the Agreement by the district court.

11. Section 7 of the Agreement provides, in relevant part:

Defendant [Mark Stottler] is awarded the ownership of all household goods, furnishings, wearing apparel, personal effects, appliances and fixtures and other personal property of every kind and description, including bank accounts, now in his possession or titled in his name not otherwise awarded herein by the Court, subject to payment of any and all encumbrances thereon from which he shall hold Plaintiff harmless.

12. There are two life insurance policies in the name of Mark Stottler. Colonial Life issued Mark an individual policy. United of Omaha Life Insurance Company, a Nebraska corporation doing business in Nebraska ("United of Omaha"), issued a group policy, Policy No. GLUG-APVZ (the Colonial Life policy and the United of Omaha policy individually, a "Policy", and collectively, the "Policies"), to Great Plains Communications, Inc. ("Great Plains"), Mark's former employer. The Policies were in existence before Mark and Brenda's divorce, and Mark designated Brenda as the primary beneficiary of the Policies upon his death. On information and belief, the Colonial Life Policy lists "all children equally" as the contingent beneficiaries, and under the United of Omaha Policy, the contingent beneficiaries are Mark Stottler's surviving natural children, in equal shares. Also on information and belief, the combined proceeds of the death benefits of the Policies equal the principal sum of $400,000.00.

13. Per the Agreement, the district court awarded Brenda her two retirement accounts and awarded Mark his 401(k) account with Great Plains. The Agreement is silent, however, regarding the Policies, and therefore, under Section 7, because the district court did not otherwise award the Policies and they were in Mark's name, the district court awarded ownership of the Policies to Mark Stottler.

14. Under the Agreement, Brenda Stottler knowingly and voluntarily waived, renounced, and released any and all of her interests, rights, or claims of rights in Mark Stottler's property, except as otherwise provided in the Agreement.

15. Section 11 of the Agreement provides:

WAIVER OF RIGHTS:  Plaintiff and Defendant each hereby absolutely and forever waive, release and renounce any claim to a distributive share of the estate of the other and hereby waive and renounce any right to qualify as Personal Representative of the other or to administer his or her personal estates.  Each party waives any right of election as surviving spouse that he or she may now or hereinafter acquire and further foregoes and relinquishes any claim, demand or right to receive any share of the estate of the other against the provisions of any last will and testament of the other party whether heretofore or hereinafter executed as now provided or may hereinafter be provided by the laws of any state or country.  *Each party specifically renounces and releases all interest, right, or claim of right that he or she has or might otherwise have against the other or the property of the other under the laws of any state or country, it being the specific intent of the parties to effectuate a full and complete renunciation of any interest each of the parties may have in the other party's property except as provided in this agreement.*  (Emphasis added).

16. On March 1, 2012, the district court entered a Decree of Dissolution dissolving the marriage of Mark and Brenda (the "Decree"), and the Decree became final thirty days later.  *See* Neb. Rev. Stat. §§ 42-372.01(1), 42-372.  A copy of the Decree is attached hereto as Exhibit C and incorporated herein by this reference.

17. In the Decree, the district court ordered, adjudged, and decreed that the Agreement was approved, confirmed, ratified in all respects, and incorporated as a part of the Decree as if fully set forth verbatim in the Decree.

18. Nebraska courts follow the "waiver rule."  *Rice v. Webb*, 287 Neb. 712, 724–25, 844 N.W. 2d 290, 299–300, 844 ("A competing rule, the document rule, has been discussed but not adopted in our case law."); *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 319, 647 N.W.2d 85, 89–90 (2002) (concluding the plaintiff waived

her expectancy interest as the beneficiary of a workers' compensation annuity in the decree of dissolution, which incorporated the property settlement agreement). In short, under Nebraska law, a spouse may waive a beneficiary interest in a life insurance policy in a divorce decree. *See Rice*, 287 Neb. at 724, 844 N.W.2d at 299–300 (citing *Pinkard*, 264 Neb. at 318, 647 N.W.2d at 89).

19. In *Rice*, the Nebraska Supreme Court explained that under the waiver rule:

> The focus of whether a spouse has waived such a beneficiary interest should be upon the language of the dissolution decree and any agreement which sets forth the intentions of the parties concerning property rights. If the dissolution decree and any property settlement agreement incorporated therein manifest the parties' intent to relinquish all property rights, then such agreement should be given that effect. We make no distinction among IRA's, *life insurance proceeds*, or other types of annuities that designate the beneficiary in the event of the death of the payee. *Id.* at 724–25, 299–300 (emphasis added) (quoting *Pinkard*, 264 Neb. at 318, 647 N.W.2d at 89).

20. The property settlement agreement in *Rice* is similar to the one at issue here: "[Brenda] waives and relinquishes any and all interest, present and future, in any and all property, real, personal, or otherwise, now owned by [Dale] or hereafter acquired, and including all property set aside for him in this agreement. . . ." *Id.* at 726, 301. The Nebraska Supreme Court found no ambiguity in the decree and concluded as a matter of law that under the terms of the decree, the former wife unambiguously waived her beneficiary interest in her former husband's life insurance policies. *Id.* at 726–27, 301.

21. Similarly, in this case, under section 7 of the Agreement, all of the personal property of every kind and description in Mark Stottler's name or in his possession not otherwise awarded in the Agreement was awarded to Mark Stottler. The Policies are in Mark Stottler's name, and in the Decree, the district court did not

otherwise award them. Accordingly, the district court awarded the Policies to Mark Stottler.

22. Under section 11 of the Agreement, Brenda Stottler waived and relinquished all interest in property set aside to Mark Stottler. As a matter of law, therefore, under the terms of the Decree, Brenda Stottler unambiguously waived her interest in the Policies. *See Rice*, 287 Neb. at 726–27 (finding a former wife waived her beneficiary interest in property set aside to her former husband, and therefore, she waived her beneficiary interest in her former husband's life insurance policies, even though he failed to change the beneficiary designation after the divorce); *Pinkard*, 264 Neb. at 318–19, 647 N.W.2d at 89–90 (finding a former wife waived her beneficiary interest in an annuity by entering into a property settlement agreement, and although the former husband had not changed the beneficiary designation after the divorce, the waiver was effective).

23. It is irrelevant whether the Agreement expressly covered the Policies. *Compare Lynch v. Bogenrief*, 237 N.W.2d 793, 798–99 (Iowa 1976) (finding no waiver of life insurance proceeds where there was no mention of retirement or death benefits in the divorce decree) *with Sorenson v. Nelson*, 342 N.W.2d 477, 480–81 (Iowa 1984) (finding "the disposition of the parties' rights of 'every kind and character'" evidenced an intent to "wipe the slate clean" between the parties and affirming the district court's order that the ex-wife stipulated away her interest in the policy proceeds); *see also Pinkard*, 264 Neb. at 318, 647 N.W.2d at 89 (applying the rationale of the Iowa Supreme Court in *Sorenson v. Nelson*).

24. Moreover, Brenda Stottler's waiver of her interest in the Policies was

knowing and voluntary. Under section 10(B) of the Agreement, she represented that she had conducted an independent and complete investigation and as a result, she fully knew the extent of all property in which she had an interest. Under section 10(E) of the Agreement, she represented that she entered into the Agreement freely, voluntarily, and after weighing all facts and circumstances likely to influence her judgment.

25. At the time of Mark Stottler's death, both Policies still listed Brenda Stottler as the primary beneficiary. She filed a claim with United of Omaha for the death benefits of the United of Omaha Policy, and upon information and belief, she filed a claim with Colonial Life for the death benefits of the Colonial Life Policy. The claim form Brenda Stottler submitted to United of Omaha is attached hereto as Exhibit D and incorporated herein by this reference.

26. Upon information and belief, Colonial Life and United of Omaha have distributed or will distribute the proceeds of the Policies to Brenda Stottler.

## FIRST CAUSE OF ACTION
### TRO/Injunction/Breach of Contract
### (Against Brenda Stottler)

27. Plaintiffs restate each allegation above as if fully set forth here.

28. Brenda Stottler's conduct, including submitting claims for the proceeds of the Policies, has breached and will continue to breach the Agreement.

29. Brenda willfully and intentionally breached the Agreement, and as a direct and proximate result of her breaches, Plaintiffs suffered damages in amounts to be proven at the time of trial herein, including the amount of the proceeds of the Policies, plus statutory interest. Mark Stottler performed all of his obligations under the Agreement.

30. Plaintiffs have no adequate remedy at law to prevent Brenda Stottler from breaching the Agreement by claiming and obtaining the proceeds of the Policies and spending them.

31. Under Rule 65 of the Federal Rules of Civil Procedure, this Court has the power, in its discretion, to enter a preliminary injunction to restrain the commission or continuance of some act that would produce irreparable harm.

32. The grounds for this preliminary injunction are as follows: (1) the conduct sought to be restrained, including Brenda Stottler's receipt or spending of the proceeds of the Policies, threatens Plaintiffs with immediate and irreparable injury; (2) the balance of harms favors Plaintiffs, as the injunction will inflict little if any harm on Brenda Stottler because by law, she is not entitled to the proceeds of the Policies, and even if Plaintiffs are ultimately unsuccessful, the injunction will only delay Brenda Stottler's receipt of the funds; (3) there is a high probability that Plaintiffs will succeed on the merits—by law, Brenda Stottler waived her interests in the Policies; and (4) the public interest favors Plaintiffs by enforcing Nebraska law, the ruling of the district court in the Decree, and the intent of the parties under the Agreement and others in a similar situation that is bound to reoccur. *See Vonage Holdings Corp. v. Neb. PSC*, 564 F.3d 900, 904 (8th Cir. 2009) (citation omitted) (listing the factors for a preliminary injunction under Fed. R. Civ. P. 65).

33. The Employee Retirement Income Security of Act of 1974 ("ERISA") does not preempt or preclude this cause of action against Brenda Stottler for the proceeds of the Policies after United of Omaha and Colonial Life distributed them to her. In *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan* (hereinafter,

*Kennedy v. DuPont*), the decedent, William Kennedy, worked for E. I. DuPont de Nemours & Company ("DuPont") and was a participant in its savings and investment plan (the "SIP"). 555 U.S. 285, 288. The SIP was an ERISA "employee pension benefit plan." *Id.* at 289. William Kennedy married Liv Kennedy and designated her to take benefits under the SIP. *Id.* at 289. William and Liv divorced in 1994, subject to a decree divesting Liv of all right, title, interest, and claim in and to any and all proceeds related to a retirement plan, pension plan, or like benefit program. *Id.* William did not execute any documents removing Liv as the beneficiary of the SIP, and on his death, the executrix of his estate asked DuPont to distribute the SIP funds to William's estate. *Id.* at 289–90. DuPont paid the funds to Liv relying on the beneficiary designation, and William's estate sued DuPont and the plan administrator, claiming that Liv waived her interest in the SIP benefits in the divorce decree. *Id.* at 290. The U.S. Supreme Court held that the plan administrator was not required to honor Liv's waiver with the consequence of distributing the SIP balance to William's estate. *Id.* at 299. The Court noted, however, that it expressed no view as to whether William's estate could have brought an action in state or federal court against Liv to obtain the SIP benefits after the plan administrator distributed them to her. *Id.* at 300 n.10. Accordingly, *Kennedy v. DuPont* does not foreclose this cause of action against Brenda Stottler for the proceeds of the Policies she received from Colonial Life or United of Omaha. *See, e.g.*, *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 136–37 (3d Cir. 2012) (distinguishing *Kennedy v. DuPont*, which involved a suit against a plan administrator before it distributed benefits, and holding, "to the extent that ERISA is concerned with the expeditious payment of plan proceeds to beneficiaries, permitting suits against

beneficiaries *after* benefits have been paid does not implicate any concern of expeditious payment or undermine any core objective of ERISA").

WHEREFORE, Plaintiffs respectfully request the Court:

a. Grant preliminary injunctive relief under Fed. R. Civ. P. 65 enjoining Brenda Stottler from violating the Agreement, including, without limitation, spending any of the proceeds of the Policies she received.

b. Enter an order compelling Brenda Stottler to pay any proceeds of the Policies she received into the Court to hold in escrow pending the resolution of this lawsuit.

c. In the absence of an injunction, award damages in an amount according to proof for any damages Brenda Stottler's breach of the Agreement has caused Plaintiffs;

d. Order Brenda Stottler to pay the costs of this action; and

e. Award Plaintiffs any other relief the Court deems equitable and just.

## SECOND CAUSE OF ACTION
### Unjust Enrichment and Constructive Trust
### (Against Brenda Stottler)

34. Plaintiffs restate each allegation above as if fully set forth here.

35. Upon information and belief, Brenda Stottler has received the proceeds of the Policies through her breaches of the Agreement, and in good conscience, the proceeds belong to Plaintiffs.  Brenda has retained the money wrongfully, and in justice and fairness, she must repay the proceeds to Plaintiffs.

36. Because Brenda Stottler wrongfully obtained or retained funds belonging in good conscience to Plaintiffs, the Court should impose a constructive trust of an

amount to be determined at trial, including but not limited to all proceeds of the Policies.

WHEREFORE, Plaintiffs respectfully request the Court:

    a.    Enter a judgment against Brenda Stottler and in favor of Plaintiffs;

    b.    Award Plaintiffs damages in an amount according to proof for all damages that Brenda Stottler's conduct, including her breaches of the Agreement, has caused Plaintiffs.

    c.    Order Brenda Stottler to pay the costs of this action;

    d.    Enter an order imposing a constructive trust upon the proceeds of the Policies; and

    e.    Award Plaintiffs any other relief the Court deems equitable and just.

## THIRD CAUSE OF ACTION
### Declaratory Judgment
### (Against Brenda Stottler and Colonial Life)

37.    Plaintiffs restate each allegation above as if fully set forth here.

38.    This Court has the power to declare the rights and other legal relations of Plaintiffs and Defendants under the Decree in and to the proceeds of the Policies, whether or not Plaintiffs could seek further relief.  *See* 28 U.S.C. § 2201(a); Fed. R. Civ. P. 57.

39.    In accordance with 28 U.S.C. § 2202, the Court has the power to grant further necessary or proper relief against Brenda Stottler or Colonial Life.

40.    The Court may construe the Agreement and declare a judgment before there has been a breach of the Agreement.  *See Maytag Corp. v. UAW*, 687 F.3d 1076, 1081 (8th Cir. 2012) ("In the context of disputes between parties to a contract, the declaratory judgment remedy 'is intended to provide a means of settling an actual

controversy before it ripens into . . . a breach of a contractual duty.'") (quoting *Rowan Cos. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989)), *reh'g denied*, 2012 U.S. App. LEXIS 20701 (8th Cir. Oct. 3, 2012).

WHEREFORE, Plaintiffs respectfully request the Court:

    a.    Declare a judgment that, as a matter of law, Erin M. Eickhoff and Adam M. Stottler are each the rightful owners of equal shares of all the proceeds of the Policies.

    b.    Declare a judgment that Colonial Life should pay all of the proceeds of the Colonial Life Policy to Erin M. Eickhoff and Adam M. Stottler in equal shares.

    c.    Declare a judgment that Brenda Stottler should pay any proceeds of the Policies that she receives from United of Omaha or Colonial Life to Erin M. Eickhoff and Adam M. Stottler.

    d.    Order Brenda Stottler and Colonial Life to pay the costs of this action; and

    e.    Award Plaintiffs any other relief the Court deems equitable and just.

### FOURTH CAUSE OF ACTION
### Declaratory Judgment
### (Against Colonial Life)

41.    Plaintiffs restate each allegation above as if fully set forth here.

42.    On information and belief, the Policy that Colonial Life issued to Great Plains is not an "employee welfare benefit plan" or "welfare plan" governed by ERISA because: Great Plains and no employee organization affiliated with Great Plains makes contributions; employee participation is completely voluntary; Great Plains does not

endorse the Policy; Great Plain's sole function regarding the Policy is to collect premiums and to permit insurers to publicize the Policy; and Great Plains receives no consideration in connection with the Policy, other than reasonable compensation without profit for administrative services it provides.  *See* Labor Reg. § 2510.3-1(j).

43. Because the Colonial Life Policy is not an employee welfare benefit plan, ERISA does not supersede Nebraska law regarding the Policy or the proceeds of the Policy.  *See* 29 U.S.C. § 1144(a) (providing ERISA supersedes any and all State laws that relate to any employee benefit plan).

44. Accordingly, the "document rule", under which plan administrators must distribute the benefits to the person named on the designation document as the beneficiary, is inapplicable.  Nebraska has not adopted the document rule and limits it to benefit plans governed by ERISA, and therefore, it does not apply to this action.  *Rice v. Webb*, 287 Neb. 712, 725, 844 N.W.2d 290, 300 (2014).

45. Under Nebraska law, a "decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself."  *Rice*, 287 Neb. at 725, 844 N.W. 2d at 300 (2014) (citing *Metro. Life Ins. Co. v. Beatty*, 242 Neb. 169, 493 N.W.2d 627 (1993) and *Hohertz v. Estate of Hohertz*, 19 Neb. App. 110, 802 N.W.2d 141 (2011)).

46. The Decree is unambiguous.  Under Section 7 of the Agreement, the District Court of Burt County, Nebraska awarded the Policies, which were titled in Mark Stottler's name, to Mark Stottler, and in accordance with Section 11 of the Agreement, Brenda Stottler waived all of her rights, title, and interests in the property of Mark

Stottler not otherwise awarded to her in the Agreement, including the Policies.

WHEREFORE, Plaintiffs respectfully request the Court:

    a.    Declare a judgment that, as a matter of law, Erin M. Eickhoff and Adam M. Stottler are each the rightful owners of equal shares of all the proceeds of the Policies.

    b.    Declare a judgment that Colonial Life should pay all of the proceeds of the Colonial Life Policy to Erin M. Eickhoff and Adam M. Stottler in equal shares.

    c.    Order Colonial Life to pay the costs of this action; and

    d.    Award Plaintiffs any other relief the Court deems equitable and just.

Dated this 23rd day of February 2015.

          Erin M. Eickhoff, Adam M. Stottler, and Erin M. Eickhoff, as Personal Representative of the Estate of Mark G. Stottler, Deceased, Plaintiffs

By: /s/ George E. Martin
George E. Martin, III (NE #21747)
Anthony D. Todero (NE #24624)
of BAIRD HOLM LLP
1500 Farnam Street, Suite 1500
Omaha, Nebraska 68102-2068
Telephone: 402-344-0500
Facsimile: 402-344-0588
Email: gmartin@bairdholm.com
atodero@bairdholm.com
Their attorneys

By: /s/ Jacqueline M. Tessendorf
Jacqueline M. Tessendorf (NE #21533)
Ryan G. Tessendorf (NE #21884)
of TESSENDORF & TESSENDORF, P.C.
2362 26th Avenue, P.O. Box 925
Columbus, NE 68602-0925
Telephone 402-564-8555
Facsimile: 402-564-8557
Email: jacitessendorf@yahoo.com
ryantessendorf@yahoo.com
Their attorneys